**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRIPLE UP LIMITED**      ) | |
| Second Floor City      ) | |
| Independence Avenue      ) | **Case No.: 1:16-cv-159** |
| Victoria, Mahe, Seychelles      ) | |
|      ) | |
| **Plaintiff,**      ) | |
|      ) | **COMPLAINT AND** |
| **v.**      ) | **JURY DEMAND** |
|      ) | |
| **YOUKU TUDOU INC.**      ) | |
| PO Box 309, Ugland House      ) | |
| Grand Cayman      ) | |
| KY1-1104 Cayman Islands      ) | |
|      ) | |
| **Defendant.**      ) | |
| _____) | |

## COMPLAINT

Plaintiff, TRIPLE UP LIMITED ("Plaintiff," or "TUL"), brings this complaint in the

United States District Court for the District of Columbia against YOUKU TUDOU INC.

("Defendant" or "YOUKU") and alleges as follows:

### NATURE OF THE CASE

1.      Plaintiff owns the exclusive internet broadcasting rights of three Taiwanese

movies in the United States: "沉睡的青春" ("Sleeping Youth"), "對不起，我愛你" ("Sorry, I

Love You"), and "松鼠自殺事件" ("Squirrel Suicide Incident") (collectively, "Copyrighted

Works").

2.      Among the bundle of copyright rights afforded Plaintiff, the Copyright Act

provides the Plaintiff with the exclusive right "to transmit or otherwise communicate a

performance or display of" the Copyrighted Works "to the public by means of any device or

process, whether the members of the public capable of receiving the performance or display

receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101; *see also* § 106.

3.      Defendant claims to be China's leading internet television company and its Youku and Tudou platforms enable users, including those in the United States and in this District, to search, view, and share high-quality video content across multiple devices.

4.      Upon information and belief, Defendant, through one or more of its employees, contractors, and/or agents, uploaded Plaintiff's Copyrighted Works to its Youku and/or Tudou platforms, then caused and carried out the unauthorized public performance of, reproduced, and/or distributed the Copyrighted Works by publicly streaming them on Defendant's websites in the United States, including in this District. Upon information and belief, Defendant's websites streaming or displaying the Copyrighted Works include, at least, Youku (*accessible at, e.g.,* http://www.youku.com/),Tudou (*accessible at, e.g.,* http://www.tudou.com/), and Soku (*accessible at, e.g.,* http://www.soku.com/).

5.      Defendant never sought and never obtained any license from Plaintiff to publicly perform, reproduce, and/or transmit the Copyrighted Works via internet in the United States.

6.      Defendant has engaged in false and misleading representations and omission of material fact, and has engaged in deceptive conduct. Such conduct constitutes false designations of origin and/or false and misleading representations that are likely to cause confusion, mistake, and/or to deceive the purchasing public and others as to the origin of Defendant's goods and services, whereby consumers and others would be led to believe, incorrectly, that Defendant has a license to stream Plaintiff's Copyrighted Works online in the United States.

7.      Upon information and belief, Defendant's entire business model is flawed and relies upon systematic, widespread, and willful copyright infringement. Upon information and

2

belief, although Defendant's business began with a business plan similar to that of YouTube.com, wherein most video content is user-generated, Defendant began engaging in systematic, widespread, and willful copyright infringement after discovering that most of its users spent the majority of their time watching copyrighted full-length TV shows and movies online. Upon information and belief, although Defendant allows users to upload full-length videos, including copyright-infringing videos, Defendant has also directly uploaded many unauthorized copyrighted audiovisual works itself to drive up users and views. Upon information and belief, this increase in users and views has substantially improved Defendant's revenues.

8.      Upon information and belief, Defendant intentionally misrepresented its content monitoring and copyright compliance efforts in its 2014 Annual Report filed with the United States Securities and Exchange Commission ("SEC").

9.      In its 2014 Annual Report, Defendant claimed to have about 3,000 full-time employees and 800 contract employees working to ensure copyright compliance for its video content library, which contains approximately 5,500 movie titles, 2,600 television serial drama titles, and over 540 variety shows. Yet Defendant still faced hundreds of copyright infringement lawsuits every year in China alone, based on the number of copyright lawsuits stated by Defendant itself in its 2014 Annual Report. Upon information and belief, Defendant actually understated the number of copyright infringement lawsuits it and its subsidiaries and affiliates have faced.

10.      Upon information and belief, it is simply inconceivable that Defendant would have been the target of hundreds of lawsuits if Defendant truly had as many employees, contractors, and/or agents working on copyright compliance as claimed in the 2014 Annual Report. Indeed, to avoid copyright infringement, each of Defendant's 3,800 copyright

compliance employees or contract employees would have merely needed to check the copyright status of two or three of Defendant's 8,640 video titles that Defendant itself uploaded. This indicates a systematic, reckless, and/or willful neglect of others' copyrights within Defendant's organization.

11.    Also in its 2014 Annual Report, Defendant claimed to use a "video fingerprint system it jointly developed with a U.S. software company compares newly uploaded videos with fingerprint trails of copyrighted videos in [its] system and screens out those that have piracy issues." Upon information and belief, in view of Defendant's widespread infringement of Plaintiff's and others' copyrights, this statement is false.

12.    Upon information and belief, Defendant systematically and willfully disregarded others' copyrights in audiovisual works by intentionally uploading others' copyrighted audiovisual works on its platforms and websites to drive up site traffic for profits (e.g., from advertising sales) itself (through its own employees, contractors, and agents) without license or authority to do so. Upon information and belief, Defendant has faced significantly more copyright infringement lawsuits in China than its major competitors, further indicating that Defendant's business practices are fundamentally flawed.

13.    Therefore, Defendant has also engaged in unfair competition under the common law of the District of Columbia.

14.    Plaintiff is entitled to exemplary and punitive damages by reasons of Defendant's willful, reckless, deliberate and intentional conduct.

## PARTIES

15.    Plaintiff is a Seychelles Corporation with a business address at Second Floor City, Independence Avenue, Victoria, Mahe, Seychelles.

16.     Plaintiff owns the exclusive internet broadcasting rights of the Copyrighted Works in the United States.

17.     On information and belief, Defendant is a Cayman Islands company publically traded in the New York Stock Exchange under the stock symbol "YOKU" and has a principal place of business at 11/F, SinoSteel Plaza, 8 Haidian Street, Beijing, 100080, the People's Republic of China.

18.     On information and belief, Defendant claims to be China's leading internet television company and derives a majority of its revenues from online advertising services.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Defendant because it has continuous and ongoing business contacts with residents of the District of Columbia through, among other things, broadcasting videos over internet via its Youku.com and Tudou.com and displaying advertisements aimed at residents of the District of Columbia.

20.     This case arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125(a), as well as the laws of the District of Columbia governing unfair competition occurring in the District of Columbia and unlawful trade practices under D.C. Code § 28-3904 (2013).

21.     This Court has federal question subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 to hear Plaintiff's claims under 17 U.S.C. § 101 *et seq.* and 15 U.S.C. § 1125(a). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's non-federal claims.

22.     Additionally, the Court has diversity subject matter jurisdiction to hear Plaintiff's claims under 28 U.S.C. §1332 as there exists diversity of citizenship among the parties hereto and the amount of controversy, exclusive of interest and costs, exceeds the sum of $75,000.

23.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the acts of copyright infringement and unfair competition that give rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

24.     Plaintiff acquired the exclusive internet broadcasting rights in the United States of the 2007 Taiwanese movie "沉睡的青春" ("Sleeping Youth") for a period from December 1, 2015 to November 30, 2017.

25.     Plaintiff acquired the exclusive internet broadcasting rights in the United States of the 2009 Taiwanese movie "對不起，我愛你" ("Sorry, I Love You") for a period from December 1, 2015 to November 30, 2017.

26.     Plaintiff acquired the exclusive internet broadcasting rights in the United States of the 2006 Taiwanese movie "松鼠自殺事件" ("Squirrel Suicide Incident") for a period from January 1, 2015 to November 9, 2017.

27.     Plaintiff owned and owns the exclusive internet broadcasting rights of the Copyrighted Works in the United States during the time frame relevant to this lawsuit.

28.     While Taiwan is not a signatory to the Berne convention, Taiwan joined the World Trade Organization ("WTO") on January 1, 2002 and is therefore subject to the substantive terms of the Berne convention via The Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS"). Thus, Plaintiff's Copyrighted Works are subject to US copyright law. 17 U.S.C. §104(b)(1)-(2).

29.     As depicted in the below snapshot of a directory page of Defendant's Soku website, Defendant offered the movie "沉睡的青春" ("Sleeping Youth") for viewing on its

6

websites in the United States and in the District of Columbia without any permission from Plaintiff.



30.    Upon information and belief, Defendant uploaded this movie itself (through its employees, contractors, and/or agents) because the page for this movie did not indicate any user who uploaded the movie. In contrast, user-uploaded contents are displayed on Defendant's platforms differently and less prominently and are indicated with the IDs of the users who uploaded such contents.

31.    As depicted in the below snapshot of a video broadcast page of Defendant's Tudou website, Defendant publicly performed this movie, or caused it to be performed publically, on its Tudou website, in the United States and in the District of Columbia, via internet, without any permission from Plaintiff. Defendant reproduced this movie, caused it to be reproduced, distributed this movie, and/or caused it to be distributed, on its Tudou website, in the United

States and in the District of Columbia, for viewing via internet, without any permission from

Plaintiff.



32.     As depicted in the below snapshot of a directory page of Defendant's Soku

website, Defendant offered the movie "對不起，我愛你" ("Sorry, I Love You") for viewing on

its websites in the United States and in the District of Columbia without any permission from

Plaintiff.



33.     Upon information and belief, Defendant uploaded this movie itself (through its employees, contractors, and/or agents) because the page for this movie did not indicate any user who uploaded the movie. In contrast, user-uploaded contents are displayed on Defendant's platforms differently and less prominently and are indicated with the IDs of the users who uploaded such contents.

34.     As depicted in the below snapshot of a video broadcast page of Defendant's Tudou website, Defendant publicly performed this movie, or caused it to be performed publically, on its Tudou website, in the United States and in the District of Columbia, via internet, without any permission from Plaintiff. Defendant reproduced this movie, caused it to be reproduced, distributed this movie, and/or caused it to be distributed, on its Tudou website, in the United States and in the District of Columbia, for viewing via internet, without any permission from Plaintiff.



35.    As depicted in the below snapshot of a directory page of Defendant's Soku website, Defendant offered the movie "松鼠自殺事件" ("Squirrel Suicide Incident") for viewing on its websites in the United States and in the District of Columbia without any permission from Plaintiff.



36.     Upon information and belief, Defendant uploaded this movie itself (through its employees, contractors, and/or agents), because the page for this movie did not indicate any user who uploaded the movie. In contrast, user-uploaded contents are displayed on Defendant's platforms differently and less prominently and are indicated with the IDs of the users who uploaded such contents.

37.     As depicted in the below snapshot of a video broadcast page of Defendant's Youku website, Defendant publicly performed this movie, or caused it to be performed publically in the United States and in the District of Columbia, via internet, without any permission from Plaintiff. Defendant reproduced this movie, caused it to be reproduced, distributed this movie, and/or caused it to be distributed, on its Youku website, in the United States and in the District of Columbia, for viewing via internet, without any permission from Plaintiff.



38.     As depicted in the below snapshot of a video broadcast page of Defendant's Tudou website, Defendant also publicly performed this movie, or caused it to be performed publically, in the United States and in the District of Columbia, via internet, without any permission from Plaintiff. Defendant also reproduced this movie, caused it to be reproduced, distributed this movie, and/or caused it to be distributed, on its Tudou website, in the United States and in the District of Columbia, for viewing via internet, without any permission from Plaintiff.



39. Upon information and belief, Defendant had and has the right and ability to control the infringing acts, such as disenabling unauthorized online access to Plaintiff's Copyrighted Works on Defendant's websites.

40. Upon information and belief, Defendant has received a direct financial benefit such revenue from online advertisement.

41. An exemplary advertisement played when streaming unauthorized Plaintiff's Copyrighted Works is illustrated below:



42.     Upon information and belief, Defendant provided the means (i.e., its online platforms) for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe Plaintiff's copyright.

43.     Upon information and belief, Defendant, through one or more of its employees, contractors, or agents, uploaded Plaintiff's Copyrighted Works, without Plaintiff's permission, to its Youku and/or Tudou platforms, then caused and carried out the unauthorized public performance, reproduction, and/or distribution of the Copyrighted Works by publicly streaming them on Defendant's Youku and/or Tudou websites in the United States.

44.     Upon information and belief, each time a Copyrighted Work was performed or distributed online by Defendant, Defendant appended or overlaid at least one motion video or still advertisement to or upon the Copyrighted Work, thereby creating, displaying, reproducing, and broadcasting a derivative work.   For example, as shown in paragraph 41 above, Defendant has appended a motion video advertisement to the beginning of the movie "對不起，我愛你"

("Sorry, I Love You") for viewing on its websites in the United States and in the District of

Columbia without any permission from Plaintiff.

     45.    Defendant's conduct constitutes false designations of origin and/or false and

misleading representations that are likely to cause confusion, mistake, and/or to deceive the

purchasing public and others as to the origin of Defendant's goods and services, whereby

consumers and other would be led to believe, incorrectly, that Defendant has a license to perform

Plaintiff's Copyrighted Works online in the United States.

     46.    Upon information and belief, Defendant initially started out with a business plan

to build an online catalog of videos of user-generated content, but abandoned this business plan

because most of its users spend the majority of their time watching copyrighted full-length TV

shows and movies, such as Plaintiff's Copyrighted Works, online.

     47.    While Defendant allows users to upload full-length videos, Defendant has also

directly uploaded many unauthorized copyrighted audiovisual works, such as Plaintiff's

Copyrighted Works, to drive up users and views for profits.

     48.    Upon information and belief, Defendant intentionally misrepresented its content

monitoring and copyright compliance efforts in its 2014 Annual Report filed with the United

States Securities and Exchange Commission (SEC).

     49.    In its 2014 Annual Report, Defendant claimed to make available a video content

library containing about 5,500 movie titles, 2,600 television serial drama titles and over 540

variety shows. It also claimed to have about 3,000 full-time employees and 800 contract

employees working on copyright compliance.

     50.    It is simply inconceivable that with that many employees, contractors, and/or

agents working on copyright compliance, Defendant still faced hundreds of copyright

infringement lawsuits every year in China alone, based on the number of copyright lawsuits

stated by Defendant itself in its 2014 Annual Report. Indeed, to avoid copyright infringement,

each of Defendant's 3,800 employees or contract employees would have merely needed to check

two or three of Defendant's 8,640 video titles that Defendant itself uploaded. This indicates a

systematic, reckless, and willful neglect of others' copyrights within Defendant's organization.

51.     Upon information and belief, Defendant actually under-stated the number of

copyright infringement lawsuits it and its subsidiaries and affiliates have faced. For example,

upon information and belief, Defendant's claim that Defendant and its subsidiaries and affiliates

were subject to no lawsuits in China in 2014 with respect to its Tudou platform is plainly false.

52.     Also in its 2014 Annual Report, Defendant claimed to use a "video fingerprint

system it jointly developed with a U.S. software company compares newly uploaded videos with

fingerprint trails of copyrighted videos in [its] system and screens out those that have piracy

issues." Upon information and belief, in view of Defendant's widespread infringement of

Plaintiff's and others' copyrights, this statement is false.

53.     Upon information and belief, Defendant systematically disregarded others'

copyrighted audiovisual works and intentionally uploaded (by Defendant itself and not by users)

unauthorized copyrighted audiovisual works on its platforms and websites to drive up site traffic

for profits because Defendant derives a majority of its revenues from online advertising services.

In fact, Defendant has faced significantly more copyright infringement lawsuits in China than its

major competitors, further indicating that Defendant's business model is flawed.

54.     Defendant's acts of infringement are willful, intentional, and purposeful, in

disregard of and with indifference to the rights of Plaintiff and other copyright owners.

55.     Defendant's conduct has caused, is causing and/or, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. To the extent that Defendant has removed Plaintiff's Copyrighted Works after receiving pre-suit notice, Plaintiff is entitled to injunctive relief prohibiting Defendant from uploading Plaintiff's Copyrighted Works again in the future without Plaintiff's permission.

56.     Plaintiff is entitled to exemplary and punitive damages by reasons of Defendant's willful, reckless, deliberate, and intentional conduct.

## COUNT I
## COPYRIGHT INFRINGEMENT – INFRINGEMENT OF THE PUBLIC PERFORMANCE RIGHT IN VIOLATION OF 17 U.S.C. §§ 106(4), 501

57.     Plaintiff realleges and incorporates herein by reference all the preceding paragraphs, inclusive, of the Complaint as though set fully set forth below.

58.     Defendant, without the permission or consent of Plaintiff, has publicly performed and will publicly perform copyrighted audiovisual works of which Plaintiff has exclusive rights via internet in the United States, by directly uploading copyrighted audiovisual works and then streaming on-demand videos online of such copyrighted audiovisual works by means of Defendant's Youku and/or Tudou platforms.

59.     Plaintiff is the exclusive licensee of the Copyrighted Works' internet broadcasting rights in the United States.

60.     Defendant is directly liable for these acts of infringement under the Copyright Act. Defendant, through one or more of its employees, contractors, and/or agents, uploaded Plaintiff's Copyrighted Works to its Youku and/or Tudou platforms, then caused and carried out the unauthorized public performance of the Copyrighted Works. Defendant publicly performed the

Copyrighted Works by, among other acts, publicly streaming them on Defendant's websites that can be accessed from within and outside of the United States.

61.     To the extent Defendant is not directly liable for infringement as to public performances, then Defendant is additionally liable for vicarious infringement as to such public performance because (a) Defendant had the right and ability to control the infringer's acts, such as disenabling unauthorized online access, and (b) Defendant received a direct financial benefit from its online streaming service, including not limited to revenues from online advertisement.

62.     To the extent Defendant is not directly liable for infringement as to public performances, then Defendant is secondarily liable for contributory infringement as to such public performances because they provided the means for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe.

63.     To the extent Defendant is not directly liable for infringement as to public performances, then Defendant is secondarily liable for inducement of copyright infringement as to such public performances because Defendant expressed an intent to foster copyright infringement, and/or were willfully blind as to the infringing nature of its online streaming service.

64.     Such public performance of Plaintiff's Copyrighted Works constitutes infringement of Plaintiff's exclusive rights under copyright law in violation of 17 U.S.C. § 106(4).

65.     The infringement of Plaintiff's exclusive rights in each of its Copyrighted Works constitutes a separate and distinct act of infringement.

66.     Defendant's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to the rights of Plaintiff.

18

67.     Defendant's conduct has caused, is causing, and/or, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to preliminary and permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright. To the extent that Defendant has removed Plaintiff's Copyrighted Works after receiving pre-suit notice, Plaintiff is entitled to injunctive relief prohibiting Defendant from uploading Plaintiff's Copyrighted Works again in the future without Plaintiff's permission.

## COUNT II
## COPYRIGHT INFRINGEMENT – INFRINGEMENT OF THE REPRODUCTION AND DISTRIBUTION RIGHTS AND THE RIGHT TO PREPARE DERIVATIVE WORKS IN VIOLATION OF 17 U.S.C. §§ 106 (1), (2), (3), 501

68.     Plaintiff realleges and incorporates herein by reference all the preceding paragraphs, inclusive, of the Complaint as though set fully set forth below.

69.     Defendant, without the permission or consent of Plaintiff, has reproduced and will reproduce the Copyrighted Works of which Plaintiff has exclusive rights by making copies of such works for streaming online when Defendant encodes and/or store the Copyrighted Works on Defendant's Youku and/or Tudou platforms and stream the Copyrighted Works online via Defendant's websites.

70.     Defendant, without the permission or consent of Plaintiff, has distributed and will distribute copyrighted audiovisual works of which Plaintiff has exclusive rights via Defendant's Youku and/or Tudou platforms.

71.     Defendant, without the permission or consent of Plaintiff, has prepared derivative works of and will prepare derivative works of copyrighted audiovisual works of which Plaintiff has exclusive rights via Defendant's platforms.

72.     Plaintiff is the exclusive licensee of the Copyrighted Works' internet broadcasting rights in the United States.

73.     To the extent Defendant is not directly liable for infringement as to reproduction or distribution, then Defendant is additionally liable for vicarious infringement because (a) Defendant had the right and ability to control the infringer's acts, such as disenabling unauthorized online access, and (b) Defendant received a direct financial benefit from its online streaming service, including not limited to revenues from online advertisement.

74.     To the extent Defendant is not directly liable for infringement as to reproduction or distribution, then Defendant is secondarily liable for contributory infringement because it provided the means for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe.

75.     To the extent Defendant is not directly liable for infringement as to reproduction or distribution, then Defendant is secondarily liable for inducement of copyright infringement because Defendant expressed an intent to foster copyright infringement, and/or was willfully blind as to the infringing nature of its online streaming service.

76.     Such reproduction, distribution, and preparation of derivative works of audiovisual works constitutes infringement of Plaintiff's exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

77.     The infringement of Plaintiff's rights in each of its Copyrighted Works constitutes a separate and distinct act of infringement.

78.     Defendant's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiff.

79.     Defendant's conduct has caused, is causing, and/or, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.

80.     Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to preliminary and permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright. To the extent that Defendant has removed Plaintiff's Copyrighted Works after receiving pre-suit notice, Plaintiff  is entitled to injunctive relief prohibiting Defendant from uploading Plaintiff's Copyrighted Works again in the future without Plaintiff's permission.

## COUNT III
## FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTIONS AND REPRESENTATIONS, AND UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125

81.     Plaintiff realleges and incorporates herein by reference all the preceding paragraphs, inclusive, of the Complaint as though set fully set forth below.

82.     As described above, Defendant has engaged in false and misleading representations and omission of material fact, and has engaged in deceptive conduct.

83.     Defendant's conduct as described herein constitutes false designations of origin and/or false and misleading representations that are likely to cause confusion, mistake, and/or to deceive the purchasing public and others as to the origin of Defendant's goods and services, whereby consumers and other would be led to believe, incorrectly, that Defendant has a license to stream Plaintiff's Copyrighted Works online in the United States.

84.     The aforesaid acts of Defendant constitute the use of false designations of origin, false descriptions and representations, and federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     The aforesaid acts of Defendant have caused, and unless restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

86.     Plaintiff has no adequate remedy at law.

87.     Plaintiff is entitled to exemplary and punitive damages by reasons of Defendant's willful, reckless, deliberate and intentional conduct. To the extent that Defendant has removed Plaintiff's Copyrighted Works after receiving pre-suit notice, Plaintiff is entitled to injunctive relief prohibiting Defendant from falsely representing the nature and origin of Plaintiff's Copyrighted Works again in the future.

## COUNT IV
## UNLAWFUL TRADE PRACTICES UNDER D.C. CODE § 28-3904

88.     Plaintiff realleges and incorporates herein by reference all the preceding paragraphs, inclusive, of the Complaint as though set fully set forth below.

89.     As described above, Defendant has engaged in false and misleading representations and omission of material fact, and has engaged in deceptive conduct.

90.     Defendant's conduct as described herein constitutes false designations of origin and/or false and misleading representations that are likely to cause confusion, mistake, and/or to deceive the purchasing public and others as to the origin of Defendant's goods and services, whereby consumers and other would be led to believe, incorrectly, that Defendant has a license to stream Plaintiff's Copyrighted Works online in the United States.

91.     Defendant has disparaged the goods and services and business of Plaintiff through false and misleading representations of material facts.

92.     Upon information and belief, Defendant's entire business model is flawed and relies upon systematic, widespread, and willful copyright infringement. Although Defendant allows users to upload full-length videos, including copyright-infringing videos, upon

information and belief, Defendant has also directly uploaded many unauthorized copyrighted audiovisual works itself to drive up users and views, which has substantially improved Defendant's revenues.

93.     Upon information and belief, Defendant intentionally misrepresented its content monitoring and copyright compliance efforts to the public, its investors, and the SEC.

94.     By reasons of Defendant's knowingly false and misleading representations of fact and conduct, Defendant has violated the District of Columbia's Consumer Protection Procedures Act § 28-3904.

95.     The aforesaid acts of Defendant have caused, and unless restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

96.     Plaintiff has no adequate remedy at law.

97.     Pursuant to the District of Columbia's Consumer Protection Procedures Act § 28-3905 (k)(1), Plaintiff is entitled to enjoin Defendant's unlawful conduct as well as obtain tremble damages, punitive damages, and attorney's fees. To the extent that Defendant has removed Plaintiff's Copyrighted Works after receiving pre-suit notice, Plaintiff is entitled to injunctive relief prohibiting Defendant from conducting its unlawful practices again in the future.

<u>**COUNT IV**</u>
**COMMON LAW UNFAIR COMPETITION**

98.     Plaintiff realleges and incorporates herein by reference all the preceding paragraphs, inclusive, of the Complaint as though set fully set forth below.

99.     Defendant's false and misleading representations and deceptive conduct are material in that the same were and are likely to cause confusion, misrepresentation, and/or cause mistake or to deceive the public as to the license, approval, sponsorship or connection between Defendant and Plaintiff regarding Plaintiff's Copyrighted Works.

23

100.     Upon information and belief, Defendant's entire business model is flawed and relies upon systematic, widespread, and willful copyright infringement. Although Defendant allows users to upload full-length videos, including copyright-infringing videos, upon information and belief, Defendant has also directly uploaded many unauthorized copyrighted audiovisual works <u>itself</u> to drive up users and views, which has substantially improved Defendant's revenues.

101.     Upon information and belief, Defendant intentionally misrepresented its content monitoring and copyright compliance efforts to the public, its investors, and the SEC.

102.     Defendant has engaged in unfair competition under the common law of the District of Columbia.

103.     As a result of Defendant's acts of unfair competition, Plaintiff has suffered damages, and Defendant has been unjustly enriched.

104.     Plaintiff is entitled to exemplary and punitive damages by reasons of Defendant's willful, reckless, deliberate, and intentional conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.       For a preliminary and permanent injunction requiring that Defendant and Defendant's successors and assigns, parents, subsidiaries, affiliates, suppliers, officers, agents, servants, employees, attorneys, and all those persons in active concert, participation or privity with them cease any and all transmission, reproduction, or distribution of copyrighted works of which Plaintiff obtained exclusive rights.

B.       That the Court enter judgment in favor of Plaintiff and against Defendant on all accounts.

C.      For statutory damages, in the maximum amount provided by law arising from Defendant's violations of Plaintiff's rights. Alternatively, at Plaintiff's election, for Plaintiff's actual damages, including Defendant's profits.

D.      That Defendant be required to pay for present and future corrective advertising damages sustained by Plaintiff by reason of Defendant's unlawful acts herein alleged.

E.      For an order requiring Defendant to engage in a corrective notice campaign.

F.      For the amount of recovery to be increased as provided by law, up to three times, and that interest and costs be awarded.

G.      For restitution and/or disgorgement of Defendant's profits to Plaintiff.

H.      For a constructive trust on, and restitution, of all amounts obtained by Defendant as a result of their misconduct, together with interest thereon from the date of payment.

I.      For punitive damages.

J.      For Plaintiff's reasonable attorneys' fees.

K.      That Defendant be required to account for and identify all profits, transactions, offers and promotions, of any kind, involving products that infringe Plaintiff's exclusive rights of the copyrighted works.

L.      That Defendant, within thirty days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff's attorneys a written report under oath setting forth in detail the manner in which Defendant has complied with the above-mentioned paragraphs A, E, and K.

M.      For pre- and post-judgment interest on any monetary award made part of the judgment against Defendant.

N.      For other such relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury trial.

Dated: February 1, 2016

Respectfully submitted

/s/ Lei Mei
Lei Mei (DC Bar No. 494854)
mei@meimark.com
Laurence M. Sandell (DC Bar No. 989952,
     Admission Pending)
lsandell@meimark.com
MEI & MARK LLP
P.O. Box 65981
Washington, DC 20035-5981
Phone: 888-860-5678
Facsimile: 888-706-1173

*Counsel for Plaintiff Triple Up Limited*